IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BRANDI R. HARTFIELD**                                                     **PLAINTIFF**

**V.**                             **CIVIL ACTION NO. 1:22-cv-316-HSO-LGI**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Brandi Hartfield appeals the final decision denying her application for disability benefits. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully analyzed the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

Plaintiff filed a disability application alleging she became disabled on July 16, 2016, because of several physical and mental conditions, including depression, headaches, neck pain, numbness of arms and hands, left elbow pain, lower back pain, bursitis in both hips, nerve pain, muscle spasms in her lower back, and extreme fatigue. She was 42 years old at the time of filing, with a high school education and past relevant work experience as a bookkeeper. Following agency denials of her applications, an ALJ issued a decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she now appeals that decision.

The evidence, detailed in the memorandum briefs and the ALJ's decision, will not be repeated in depth here. Plaintiff testified at the administrative hearing that she cannot work because she does not feel that she can give 100% in the workplace every day. Medical records show that she underwent surgery for a work-related elbow injury in 2016, followed by another surgery in December 2016. Since then, she has successfully undergone a cervical fusion, ablation treatment of her lumbar spine, and bilateral iliotibial (IT) band release procedures. Functionally, Plaintiff testified that she still compensates for her elbow a lot, but she can sit for about 30 minutes, stand and move around for about 10-20 minutes, and walk 25 feet. She can also attend to her personal care, drive, and perform some cooking and cleaning without significant restriction.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish Plaintiff was precluded from all work activity. At step one of the five-step sequential evaluation,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date, July 16, 2016, through her date last insured, December 31, 2020. At steps two and three, the ALJ found that although Plaintiff's status-post open reduction internal fixation (ORIF) of right elbow, cervical and lumbar degenerative disc disease, degenerative joint disease of bilateral hips, and inflammatory arthritis were severe, they did not meet or medically

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

2

equal any listing. At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work with these exceptions:

> [She can] stand/walk up to four hours in an eight-hour workday. She can sit up to six hours in an eight-hour workday. She can lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently. The claimant should never crawl or climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and occasionally climb ramps/stairs. The claimant is limited to occasional reaching with the right upper extremity and limited to frequent handling, fingering, feeling with the right upper extremity; however, there are no manipulative limitations with the left upper extremity. She should avoid all exposure to unprotected heights and hazardous machinery, and she should avoid all jobs that would require work on uneven terrain or exposure to vibrations.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform her past relevant work as a bookkeeper through the date last insured. In addition to this job, Plaintiff could perform alternative sedentary work as an inspector, table worker, and charge account clerk.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision satisfies relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the

> meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case de novo*,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff assigns two errors on appeal: (1) The ALJ erred in failing to address her assistive device prescription, and (2) the ALJ erred in evaluating the medical opinion evidence. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. Given this record, the undersigned finds no basis for reversal or remand.

As her first point of error, Plaintiff argues the ALJ erred in failing to address her assistive device prescription. She notes that her treating physician, Dr. Myers, prescribed a rolling walker on October 7, 2021. Yet the ALJ did not evaluate the walker's medical necessity in compliance with Social Security Ruling ("SSR") 96-9P, nor did she account for it in her residual functional capacity finding.

But an ALJ need not make a finding on the medical necessity of an assistive device unless medical documentation supports the need. SSR 96-9p states that:

4

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, ***and describing the circumstances for which it is needed*** (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.).  The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, *7 (July 2, 1996) (emphasis added).  Thus, under SSR 96–9P, Plaintiff must have presented medical documentation (1) establishing the need for her walker and (2) describing the circumstances for which it is needed.  Failing that, the ALJ was not required to include the use of a walker in her residual functional capacity determination.

The record confirms that the ALJ did not address the walker prescription in either her written opinion or at the administrative hearing.  Neither did Plaintiff or her counsel, however.[2]  Despite questioning from the ALJ regarding any limitations affecting her ability to stand, walk, and climb, Plaintiff never mentioned the use of any assistive device or the fact that she had been recently prescribed such a device a month before the administrative hearing.  *Benavides v. Saul*, No. 2:21-CV-00095, 2022 WL 4287645, at *4 (S.D. Tex. Aug. 4, 2022), *report and recommendation adopted,* No. 2:21-CV-00095,

---

[2] *Hicks v. Berryhill*, No. 6:17-CV-00942, 2018 WL 7078563, at *13 (W.D. La. Nov. 1, 2018), *report and recommendation adopted,* No. 6:17-CV-00942, 2018 WL 7075284 (W.D. La. Dec. 3, 2018) (find the ALJ "erred in failing to include the necessity for a cane in the hypothetical questions that he posed to the vocational expert.  But the error was not prejudicial because the claimant was represented at the hearing, and his representative was afforded an opportunity to cure the ALJ's error by asking questions on his behalf. Although the claimant's representative did pose questions to the vocational expert, he too failed to ask about Mr. Hick's use of a cane.")

2022 WL 3701170 (S.D. Tex. Aug. 26, 2022).  Still, Plaintiff contends that the ALJ's failure to address her walker prescription makes it impossible for this Court to assess why the wheeled walker was omitted from the residual functional capacity finding.  Not so.

First, Plaintiff does not direct the Court to her *use* of an assistive device in the record, before or after the prescription was issued.  Second, "[w]hether the hand-held assistive device was prescribed is not dispositive of medical necessity."  *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 872 (S.D. Tex. 2022) (quoting *Schnurpel v. Berryhill*, No. 2:16-CV-06042, 2017 WL 2390548, at *13 (S.D.W. Va. Apr. 17, 2017), *report and recommendation adopted,* No. 2:16-CV-06042, 2017 WL 2389396 (S.D.W. Va. June 1, 2017)).  Third, Plaintiff's prescription does not outline the circumstances for which the walker is needed, nor does it provide any of the relevant information recommended in SSR 96-9P—the distance or terrain for when it should be used, or whether it should be used all the time, periodically, or only in some cases.  Lastly, Dr. Myers did not suggest an assistive device in any of his evaluations, including those leading up to the date he wrote the prescription.

Indeed, as the ALJ observed, Dr. Myers notes that Plaintiff "report[ed] near total relief of her preoperative symptoms" after her left IT band release procedure.  Though she reported gluteal pain radiating into the posterior aspect of her leg, her gate was "mildly antalgic," and she was "ambulating independently."  Likewise, two weeks after her right IT band release procedure, Plaintiff's pain was controlled, and she could perform "activity as tolerated."  *See, e.g.*, *Morgan v. Comm'r, Soc. Sec.*, No. CIV. JKB-13-2088, 2014 WL 1764922, at *1 (D. Md. Apr. 30, 2014) (finding claimant's use of a

cane was not medically necessary where "treating physician not[ed] normal gait during examination," "x-ray show[ed] moderate degenerative changes in the left hip with some joint space loss and spurring" and an "examination demonstrate[ed] no pain on rolling test of hip[,]" and thus claimant was capable of light work with limitations).

Nevertheless, Dr. Myers issued the walker prescription two days later with no accompanying explanation or intervening examination. There was also no mention of it in his medical source statement two weeks later. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that a physician's opinion that a patient required a cane held little weight because the opinion was brief and conclusory with a "lack of explanatory notes or supporting objective tests and examinations"). Given the particular facts here, even though Plaintiff was prescribed a roller walker, the undersigned submits the ALJ did not err in failing to consider its medical necessity. *See also Crocker v. Colvin*, No. 1:15CV1215 (JFA), 2016 WL 1626591, at *19 (E.D. Va. Apr. 21, 2016) ("even where a claimant is prescribed a cane, substantial evidence may support a conclusion that the cane is not medically necessary, and as such, an ALJ's decision not to consider the impact of a claimant's cane use on her residual functional capacity is not error.") (collecting cases).

Even if the ALJ had erred, reversal is appropriate if Plaintiff was prejudiced. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Procedural perfection in administrative proceedings is not required" if "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Plaintiff "must show that, had the ALJ done his duty, [Plaintiff] could and would have adduced evidence

7

that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). No such showing has been made here.

SSR 96-9P recognizes that even someone who uses a *medically required* hand-held assistive device may be able to perform the minimal lifting and carrying requirements of sedentary work—the least demanding category of work activity recognized by the regulations. The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, including her past work as an accountant, with certain postural and environmental restrictions—she should avoid exposure to vibrations, unprotected heights, hazardous machinery, and uneven terrain. Plaintiff has not shown that the use of a rolling walker, within the limits of this residual functional capacity, would significantly erode the sedentary occupational base. *Contreras v. Berryhill*, No. CV 16-6650-JPR, 2017 WL 2798521, at *7 (C.D. Cal. June 28, 2017) ("Use of a cane may limit a claimant's ability to perform light work, but it is less likely to preclude sedentary work.").

As her second point of error, Plaintiff alleges the ALJ failed to properly evaluate Dr. Myers's opinion. Besides needing to lie down once an hour, Dr. Myers concluded that Plaintiff's medical conditions and associated symptoms would often interfere with her ability to maintain attention and concentration. She also would miss more than four workdays per month and would be unable to sustain full-time employment on a continuing basis. In support, Dr. Myers cited Plaintiff's diagnoses for fibromyalgia, lumbosacral radiculopathy, spinal stenosis, and chronic severe pain, among other things.

He did not, however, set forth any functional limitations with any specificity. Nor did he state that Plaintiff should use a rolling walker.

In assessing the evidence, the ALJ assigned Dr. Myer's medical source statement little weight, explaining as follows:

> The undersigned has given little weight to this opinion because it is brief, conclusory, and inadequately supported by clinical findings. Dr. Myers identified reduced cervical and lumbar range of motion and positive straight leg raise at 30 degrees bilaterally. He opined the claimant would need to take unscheduled breaks and would be absent more than four times a month. The functional limitations assessed by Dr. Myers would preclude the claimant from working at the level of substantial gainful activity. The undersigned finds this conclusion has no probative value and rejects it. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 C.F.R. § 404.1527(e). Dr. Myers primarily summarized the claimant's subjective complaints, diagnoses, and treatment, but he did not provide medically acceptable clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective medical evidence as a whole already discussed above in this decision, which did not show any severe degenerative changes. Additionally, her physical exam notes general improvement in her functioning. Likewise, this opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Thus, the undersigned finds this opinion unpersuasive because it is inconsistent with the record as a whole.

Plaintiff contends that the ALJ's analysis of Dr. Myers's opinion does not sufficiently explain the supportability and consistency factors required by the regulations, depriving this Court of meaningful judicial review. The undersigned does not so read the ALJ's decision.

Social security regulations were revised in recent years so that supportability and consistency of medical opinions are the most important factors in assessing opinion evidence, and ALJs may, but are no longer required to, explain how they considered

9

other factors. 20 C.F.R. § 404.1520c(b). The regulation sets forth certain "articulation requirements" specifically requiring the ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [the claimant's] determination or decision." § 404.1520c(b)(2). But it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citation omitted). An ALJ need not adopt a specific physician's assessment. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023). An ALJ remains free to assign little or no weight to the opinion of any physician when it is unsupported by the evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

Arguably here, it would have been better for the ALJ to set forth her persuasiveness findings with greater specificity in the section of her opinion discussing the medical opinion evidence. But it is not hard to discern from the ALJ's decision why she found Dr. Myers's opinion was unsupported and inconsistent with the evidence.

Plaintiff points to her treatment history with Dr. Myers throughout 2019 and 2020, highlighting those visits where she exhibited a decreased range of motion, reduced extension in her legs and back, and tenderness in her spine. All the same, Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021). She does not address the evidence supporting the ALJ's decision: updated lumbar-spine imaging showing

resolution of the disc herniation at the L5-S1; successful IT band release procedures providing "near total relief of her preoperative symptoms"; or, clinical records showing that her pain was controlled with over-the-counter medication and she was ambulating independently.

Further, even if the Court were to find the ALJ erred as Plaintiff argues, Plaintiff "misunderstands her burden here." *Miller*, 2023 WL 234773, at *3. When recently confronted with this issue in *Miller v. Kijakazi*, the Fifth Circuit explained:

> The ALJ's error was that she did not provide sufficient explanation of her consideration of the medical opinions. As set forth above, her decision makes clear that she considered them. She acknowledged that the opinions contained more limiting restrictions, but she did not find them persuasive. Miller fails to show that if the ALJ had given further explanation, then she would have adopted them. Miller is essentially asking us to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which we cannot do. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). In sum, Miller fails to show how the ALJ's error was harmful.

*Miller*, 2023 WL 234773, at *4. *Walker v. Kijakazi*, No. 23-60116, 2023 WL 7443302, at *4 (5th Cir. Nov. 9, 2023) ("True enough, the ALJ did not expressly mention 'supportability' and 'consistency' in arriving at her decision. But Walker fails to show that 'if the ALJ had given further explanation, then she would have adopted' Walker's line of thinking and altered her outcome."). Like *Miller*, Plaintiff fails to meet her burden here. She has not shown that if the ALJ had elaborated on her assessment of Dr. Myers's opinion, that she would have adopted his restrictions effectively precluding Plaintiff from all work activity.

The issue is whether substantial evidence supports a finding that Plaintiff can perform work within the limits of her residual functional capacity as determined by the

11

ALJ. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Plaintiff's assignment of error "comes down to the weight the ALJ places on [Dr. Myers's s opinion]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 F. App'x 405, 408–409 (5th Cir. 2015) (unpublished). Substantial evidence supports the ALJ's finding that Dr. Myers's opinion was not sufficiently persuasive enough to find Plaintiff as limited to the degree opined.

## Conclusion

In sum, based on consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standards, and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, will bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on January 30, 2024.

s/ LaKeysha Greer Isaac  
UNITED STATES MAGISTRATE JUDGE